**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; PARK PLACE COMMERCE INVESTMENTS, LLC; COMMERCE STREET INVESTMENTS, LLC; PRU ALPHA FIXED INCOME OPPORTUNITY MASTER FUND I, L.P.; PRUDENTIAL TRUST COMPANY; and PRUDENTIAL INVESTMENT PORTFOLIOS 2,<br><br>                              Plaintiffs,<br><br>          v.<br><br>GOLDMAN, SACHS & COMPANY; GOLDMAN SACHS MORTGAGE COMPANY; and GS MORTGAGE SECURITIES CORPORATION,<br><br>                              Defendants. | Civil Action No. 12-6590<br>(SDW)(MCA)<br><br><br><br>**OPINION**<br><br><br>April 9, 2013 |

**WIGENTON**, District Judge.

Before the Court is Defendants Goldman, Sachs & Company; Goldman Sachs Mortgage Company; and GS Mortgage Securities Corporation's (collectively "Defendants") Motion to Dismiss the First Amended Complaint ("Motion to Dismiss") of The Prudential Insurance Company of America; Park Place Commerce Investments, LLC; Commerce Street Investments, LLC; Pru Alpha Fixed Income Opportunity Master Fund I, L.P.; Prudential Trust Company; and Prudential Investment Portfolios 2 (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendants' Motion to Dismiss is **DENIED**.

**FACTUAL HISTORY**

*Parties*

Plaintiff Prudential Insurance ("Prudential") is an insurance company headquartered in New Jersey. (Am. Compl. ¶ 13.) The remaining Plaintiffs—Park Place Commerce Investments, LLC, Commerce Street Investments, LLC, Pru Alpha Fixed Income Opportunity Master Fund I, L.P., Prudential Trust Company, and Prudential Investment Portfolios 2—are Prudential-related entities. (Am. Compl. ¶¶ 14-18.) For the purposes of this motion, Prudential and its related entities will be collectively referred to as "Plaintiffs." Plaintiffs "managed an extensive portfolio of investment assets" and were significantly involved in the mortgage market. (Defs. Br. 5.) As of September 2007, Plaintiffs held approximately $13.5 billion in residential mortgage-backed securities ("RMBS") and $241.1 billion in total investments. (Defs. Br. 5.)

Defendant Goldman Sachs & Company ("Goldman") is a New York-based investment firm that was extensively involved in the mortgage market from 2004 to 2008. (Am. Compl. ¶ 22.) The remaining Defendants—Goldman Sachs Mortgage Company and GS Mortgage Securities Corporation—are Goldman-related entities. (Am. Compl. ¶¶ 20-24.) For the purposes of this motion, Goldman and its related entities will be collectively referred to as "Defendants." Defendants engaged in buying and pooling together mortgage loans, underwriting securities, and selling securities to Plaintiffs and other investors. (Am. Compl. ¶¶ 20-25.) In 2006 and 2007,

Defendants "created and underwrote 93 RMBS and 27 mortgage-related [collateralized debt obligations ("CDO")] securitizations, totaling approximately $100 billion."  (Am. Compl. ¶ 20.)

***Mortgage Securitization Background***

Mortgage securitization is a multi-step process that involves several players.  (Am. Compl. ¶¶ 32-33.)  First, mortgage loans are created by "originators."  (Am. Compl. ¶ 33.) These loans are then pooled into groups by "sponsors"—usually Wall Street investment banks. (Am. Compl. ¶ 33.)  Sponsors then transfer the pooled loans to "depositors"—usually special-purpose affiliates of the sponsors that receive and pass on the rights to the pooled loans.  (Am. Compl. ¶ 34.)  Depositors transfer the acquired pooled loans to an issuing trust.  (Am. Compl. ¶ 35.)  The pooled loans in the issuing trust are securitized—a process by which "the rights to the cash-flows from the pool can be sold to investors . . . [and] structured such that the risk of loss is divided among different levels of investment, or 'tranches.'"  (Am. Compl. ¶ 35.)  After the tranches are established, the securities are passed back from the issuing trust to the depositor. (Am Compl. ¶ 36.)  Underwriters then purchase the securities from the depositor and offer and sell the securities to investors.  (Am. Compl. ¶ 36.)

In the process of selling securities, underwriters inform investors of the loans in the pools through "offering materials."  (Am. Compl. ¶ 37.)  The offering materials include information regarding the credit quality of the loans based on loan files created by the originators.  (Am. Compl. ¶ 39.)  Investors rely heavily on information in the offering materials in determining whether to purchase the securities, especially where the investors do not have access to the underlying loan files.  (Am. Compl. ¶¶ 40-41.)

All of the players involved in the mortgage loan securitization process—the originators, sponsors, depositors, and underwriters—earn fees for their services.  (Am. Compl. ¶¶ 51-52.)

Unlike the traditional model for mortgage loans, with mortgage loan securitization, "originators sell residential mortgages and transfer credit risk to investors through the issuance and sale of RMBS" rather than holding the loans until maturity.  (Am. Compl. ¶ 44.)

***Plaintiffs' Substantive Allegations***

Defendants were involved in the mortgage loan market in many capacities.  Defendants played the role of the sponsor, depositor, and underwriter of the RMBS, and purchased loans from other originators.  (Am. Compl. ¶ 57.)  Between February 11, 2004 and December 17, 2008, Plaintiffs purchased more than $375 million worth of RMBS from Defendants across sixteen different securitizations.  (Am. Compl. ¶ 10.)  The materials used by Defendants to solicit the purchases—the "RMBS Offering Materials"—included, among other things, information regarding the loan underwriting guidelines, appraisal standards and procedures, and information verification processes.  (See Am. Compl. ¶ 2.)

Plaintiffs allege that "[t]he [RMBS] Offering Materials, relied on by Prudential, did not reflect what Goldman Sachs knew regarding the true characteristics of Prudential's investments." (Am. Compl. ¶ 59.)  Specifically, Plaintiffs allege that the RMBS Offering Materials contained several material misrepresentations regarding underwriting standards and practices, due diligence, owner-occupancy, appraisal processes, loan-to-value ratios, assignments to the trusts, credit ratings, underwriting exceptions, and degree of risk.  (Am. Compl. ¶¶ 53-58, 76-106.) Plaintiffs provide support for each of the alleged misrepresentations by way of analyses, statistical information, reports, and examples of false or misleading statements.[1]  (See Am. Compl. ¶¶ 43-157.)

---

[1] For instance, Plaintiffs conducted their own loan-level analysis of true owner-occupancy rates on mortgage loans underlying the certificates issued by Defendants. (Am. Compl. ¶¶ 112-21.)  Plaintiffs' analysis allegedly demonstrated that the certificates failed multiple tests and a much higher percentage of borrowers did not occupy the

Plaintiffs further claim that because Defendants were in a unique position to access the underlying loan information and the originators' practices, Defendants must have known that the RMBS Offering Materials contained false and misleading statements.  (Am. Compl. ¶¶ 300-15.) Additionally, Plaintiffs allege that third-party due diligence confirms that Defendants were routinely made aware of problems with the underlying mortgage loans.  (Am. Compl. ¶¶ 325-60.)

Plaintiffs assert that a substantial part of their decision to purchase the RMBS from Defendants was because Defendants "acted as the sponsor, depositor and underwriter of the RMBS."  (Am. Compl. ¶ 57.)  As Plaintiffs were not given access to the underlying loan files, they relied significantly on Defendants' representations and assurances regarding the securities and loans.  (Am. Compl. ¶¶ 40-41, 57-75, 424-432.)  Plaintiffs allege that they suffered damages based on their detrimental reliance on these misrepresentations.   (Am. Compl. ¶¶ 437-40.) Specifically, Plaintiffs allege that "[b]ut for the misrepresentations and omissions in the Offering Materials, Prudential would not have purchased or acquired the Certificates that it ultimately did, because those representations and omissions were material to its decision to acquire the Certificates."  (Am. Compl. ¶ 438.)  Plaintiffs now seek rescission or a damages award.  (Am. Compl. ¶ 444.)

**PROCEDURAL HISTORY**

On October 16, 2012, pursuant to 28 U.S.C. §§ 1441, 1446, and 1452, the instant case was removed from the Superior Court of New Jersey, Law Division, Essex County, to the United States District Court for the District of New Jersey.  On October 26, 2012, Plaintiffs filed an Amended Complaint alleging five counts: (1) common law fraud; (2) aiding and abetting fraud,

---

mortgaged properties. (Am. Compl. ¶¶ 112-21.)  Accordingly, Plaintiffs claim that the owner-occupancy statistics were false and misleading.  (Am. Compl. ¶¶ 112-21.)

(3) equitable fraud; (4) negligent misrepresentation; and (5) violations of New Jersey Racketeering Influenced and Corrupt Organizations ("RICO") statute.  On December 10, 2012 Defendants moved to dismiss the Amended Complaint.

## LEGAL STANDARD

### *Motion to Dismiss*

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the

complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2).  Id. at 1950.

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (internal citations omitted).  The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In Fowler v. UPMC Shadyside, the Third Circuit directed district courts to conduct a two-part analysis.  578 F.3d 203, 210 (3d Cir. 2009).  First, the court must separate the factual elements from the legal conclusions.  Id.  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Id. at 210-11.  Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. (quoting Iqbal, 566 U.S. at 679).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  Id. (citing Phillips, 515 F.3d at 234-35.)

### Heightened Pleading Standard under Fed. R. Civ. P. 9(b) for Fraud Claims

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient

particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Park v. M&T Bank Corp., No. 09-cv-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (citing Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)).  Plaintiffs can satisfy this standard by alleging dates, times, places and other facts with precision.  Park, 2010 WL 1032649, at *5.

**DISCUSSION**

**I.      Choice-of-Law Determination**

As a preliminary matter, the parties dispute which state law applies to all of the claims at issue.  A federal court sitting in diversity jurisdiction must apply the forum state's choice-of-law rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Gen. Star Nat'l Ins. Co. v. Liberty Mutual Ins. Co., 960 F.2d 377, 379 (3d Cir. 1992).  New Jersey courts apply the two-pronged "most significant relationship" test of the Restatement (Second) of Conflict of Laws.  P.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008).

The first prong of the analysis requires courts to examine the substance of the potentially applicable laws to determine if an actual conflict exists.  Camp Jaycee, 197 N.J. at 143-44 (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)).  If there is no actual conflict, the analysis ends and the law of the forum state applies.  See In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997); Rowe v. Hoffman–La Roche, Inc., 189 N.J. 615, 621 (2007).  If a conflict does exist, the court must then determine which jurisdiction has the "most significant relationship" to the claim.  Camp Jaycee, 197 N.J. at 136.  This requires the court to weigh the factors enumerated in the Restatement sections corresponding to a plaintiff's cause of action.  Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 293 (D.N.J. 2009)

**Fraud Claims**

Plaintiffs' common law claims—common law fraud, aiding and abetting fraud, equitable fraud, and negligent misrepresentation—all rely on state law.  Defendants argue that a conflict of law exists between New York and New Jersey—the potentially applicable state laws—with respect to the statute of limitations for common law claims.  (Defs. Br. 11.)  Restatement § 148 applies specifically to fraud claims and identifies factors that courts should consider when making choice-of-law determinations.  <u>See</u> Restatement § 148(2).[2]  The factors identified in Restatement § 145 apply broadly to tort claims and are also considered in fraud cases.[3]

Defendants argue that New York law should apply because Defendants are New York-based entities, Defendants' materials were drafted in and disseminated from New York, and that Plaintiffs failed to identify an act by Defendants outside of New York.  (Defs. Br. 11.)  On the

---

[2] Restatement § 148(2) states, in pertinent part:
> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>> (b) the place where the plaintiff received the representations,
>> (c) the place where the defendant made the representations,
>> (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties,
>> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148.

[3] Restatement § 145 states:
> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.

> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145.

other hand, Plaintiffs argue that New Jersey law should apply because Plaintiffs received Defendants' materials in New Jersey, relied on Defendants' representations in New Jersey, and incurred losses in New Jersey. (Pls. Opp. 3.)

This Court finds that determining a choice of law at this stage is premature regarding Plaintiffs' fraud-based claims.[4]   This Court does not have sufficient facts to thoroughly analyze the various considerations required to adequately address a choice-of-law determination.   See Arcand, 673 F. Supp. 2d at 295-96 (finding that choice-of-law analysis could not be undertaken based on the record before the court, but recognizing that it may be appropriate to determine choice of law on a motion to dismiss in other cases); Harper v. LG Electronics USA, Inc., 595 F. Supp. 2d 486, 490 (D.N.J. 2009) ("The Court is unable to make the fact-intensive choice-of-law determination on the record before it. As the New Jersey Supreme Court has noted, [choice-of-law] analysis must be undertaken on an issue-by-issue basis.")   In order to appropriately weigh each state's contacts in the context of this case, this Court will benefit from acquiring further details regarding—for instance—where the alleged misrepresentations were made, where the alleged misrepresentations were relied on, Defendants' actions outside New York, Plaintiffs' actions outside New Jersey, and locations of meetings and/or transactions among the parties. Thus, this Court will defer its choice-of-law decision until the parties present a full factual record.   Accordingly, this Court will also defer a determination regarding Defendants' statute of limitations arguments until more facts are ascertained.

For the purposes of this motion, this Court will apply New Jersey law to Plaintiffs' common law claims.   See Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (after determining that a choice-of-law analysis was premature, court noted that "[s]ince

---

[4] This Court recognizes that a choice of law determination is generally made on an issue-by-issue basis.   See e.g., Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 445 (D.N.J. 2012).  Because this Court is deferring a choice of law decision to a later stage, a comprehensive analysis for each issue is not warranted.

Plaintiffs have made their allegations under New Jersey law, the Court will apply New Jersey law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard"); Harper, 595 F. Supp. at 491 (deferring choice-of-law determination and applying New Jersey law for purposes of motion to dismiss because "Plaintiffs have presented a set of facts where New Jersey law governs this action"); Arcand, 673 F. Supp. 2d at 296 (same).

**New Jersey RICO, N.J.S.A. 2C:41-1, <u>et. seq.</u>**

In the Amended Complaint, Plaintiffs allege that Defendants violated New Jersey's RICO statute. (Am. Compl. Count V.) In support of this cause of action, Plaintiffs allege that Defendants engaged in various acts of racketeering including violations of the following statutes: (1) New Jersey Uniform Securities Act, N.J.S.A. 49:3-47, <u>et seq.</u>; (2) Deceptive Business Practices, N.J.S.A. 2C:21-7i; (3) Theft by Deception, N.J.S.A. 2C:20-4; and (4) Falsifying Records, N.J.S.A. 2C:21-4(a). (Am Compl. ¶¶ 499-547.) Defendants argue that New York's RICO statute should apply rather than New Jersey's statute. Defendants further argue that a conflict of law exists between New Jersey and New York because New York does not provide a private right of action under its RICO statute. (Defs. Br. 11.)

The Court's first step in determining whether a choice-of-law determination is necessary is if an actual conflict of law exists. Camp Jaycee, 197 N.J. at 143-44 (citing <u>Lebegern v. Forman</u>, 471 F.3d 424, 430 (3d Cir. 2006)). As defendants correctly point out, application of the New York RICO statute would effectively dispose of Plaintiff's RICO claim because a private cause of action is not recognized.[5] <u>See</u> N.Y. Penal Law § 460.50. On the other hand, in New

---

[5] New York RICO states that "a charge of enterprise corruption may be prosecuted by: (a) the district attorney of any county with jurisdiction over the offense pursuant to section 460.40 of this article; (b) the deputy attorney general in charge of the statewide organized crime task force when authorized by subdivision seven of section seventy-a of the executive law; or (c) the attorney general when he is otherwise authorized by law to prosecute each of the criminal acts specifically included in the pattern of criminal activity alleged in the enterprise corruption charge." N.Y. Penal Law § 460.50.

Jersey, any person may sue for damages sustained to his business or property by reason of a New Jersey RICO violation.[6]  See N.J. Stat. Ann. § 2C:41-4.  As a result, this Court finds that an actual conflict of law exists between New Jersey and New York's RICO statute.[7]

Because a conflict of law exists, this Court must determine which jurisdiction has the "most significant relationship" to Plaintiffs' RICO claim.  Camp Jaycee, 197 N.J. at 136.  In support of their respective choices of law for the RICO claim, both parties rely on the same fraud facts and arguments with respect to the fraud choice-of-law analysis as discussed above.  (Defs. Br. 25.)  In addition, Defendants argue that "[b]ecause the alleged conduct occurred in New York, New York has a stronger interest in having its RICO statute apply to deter such conduct from occurring within its borders."  (Defs. Br. 26.)  Defendants also claim that "the alleged 'enterprise' consisted entirely of New York entities operating in New York" and that Plaintiffs failed to allege that securities were sold in New Jersey, that meetings were held in New Jersey, that misrepresentations were made in New Jersey, or that any underlying assets were located in New Jersey.  (Defs. Br. 28 (emphasis in original).)  Plaintiffs argue that New Jersey law should apply "regardless of generally choice of law principles where, as here, the state legislature intended for a broad application."  (Pls. Opp. 5-6.)

This Court recognizes that a choice-of-law determination regarding Plaintiffs' RICO claim is significant because it affects the claim's viability and is outcome-determinative.  Because of the fact-sensitive nature of this decision, this Court finds that the currently available

---

[6] New Jersey RICO states that "[a]ny person damaged in his business or property by reason of a violation of N.J.S. 2C:41-2 may sue therefor in any appropriate court and shall recover threefold any damages he sustains and the cost of the suit, including a reasonable attorney's fee, costs of investigation and litigation."  N.J. Stat. Ann. § 2C:41-4 (emphasis added).
[7] See also Ferris, Baker Watts, Inc. v. Deutsche Bank Sec. Ltd., No. 02-3682, 2004 WL 2501563 (D. Minn. Nov. 5, 2004) (holding that where Minnesota's RICO statute provided a private cause of action and New Jersey did not, a conflict of law existed).

information is insufficient to make a choice-of-law determination.  Accordingly, this Court defers determining whether New York RICO or New Jersey RICO applies until more facts are obtained.[8]   Additionally, this Court finds it inappropriate to rule on Defendants' statute of limitations argument because it is premature.   Thus, a decision regarding the statute of limitations argument until more facts are established on the record is deferred.

 For the purposes of this motion, New Jersey law will apply to Plaintiffs' RICO claim. See Snyder, 792 F. Supp. at 721; Harper, 595 F. Supp. 2d at 491; Arcand, 673 F. Supp. 2d at 296.

II.     **Defendants' Motion To Dismiss the Amended Complaint**

A. **Count One: Common Law Fraud/Fraudulent Inducement Against All Defendants**

Under New Jersey law, the elements required to establish a claim of common law fraud, fraudulent misrepresentation, and fraudulent inducement are identical: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)); see also Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624-25 (1981).

Additionally, fraud claims must meet the requirements of Fed R. Civ. P. 9(b) which imposes a heightened pleading requirement with respect to allegations of fraud, over and above that required by Rule 8(a).  Rule 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

---

[8] This Court notes Defendants' contention that Plaintiffs' RICO claims fail to the extent that Pennsylvania or Delaware apply.  For the purposes of this motion, this will not be addressed as the full choice-of-law determination is deferred to a later stage.

"Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 224 (3d Cir. 2004) (quoting <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984)). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." <u>Id.</u>

Defendants vigorously argue that Plaintiffs fail to meet each element required to establish fraud. Notably, several of Defendants' arguments relate to the merits of Plaintiffs' claim rather than the sufficiency of the pleadings. Among several other arguments, Defendants contend that they did not make any of the alleged statements regarding underwriting standards, LTV/CLTV statistics, or borrower occupancy rates. (Defs. Br. 15.) Defendants claim that the underwriting information "was provided by the unaffiliated originator" and that "Defendants expressly disclaimed any responsibility for such statements." (Defs. Br. 15.) Defendants argue that Plaintiffs' allegations do not meet Rule 9(b)'s heightened pleading standard in failing to identify any specific loans that did not comply with the underwriting guidelines. (Defs. Br. 17.) Defendants also contend that Plaintiffs fail to allege reasonable reliance and loss causation. (Defs. Br. 21-23)

This Court finds that Plaintiffs have sufficiently pled factual allegations in the Amended Complaint to establish a viable fraud claim. First, Plaintiffs allege several specific statements relating to Defendants' alleged material misrepresentations. For example, Plaintiffs contend that Defendants abandoned their underwriting guidelines despite representing to investors that due diligence was conducted on the mortgage originators and loan underwriting guidelines before purchasing the loans for securitization. (Am. Compl. ¶¶ 57-75, 107-299.) Additionally,

Plaintiffs provided detailed factual allegations in their Amended Complaint relating to Defendants' misrepresentations of owner-occupancy statistics, LTV and CLTV rations, and transfer of title.  (Am. Compl. ¶¶ 119-21, 132-34, 142.)  Based on Plaintiffs' own analysis of the mortgage loans which revealed misrepresentations by "large margins," Plaintiffs contend that "it is impossible to believe Goldman could have conducted this due diligence on the Mortgage Loans in the pools without concluding that a very high percentage of the Mortgage Loans in the pools did not comply with the underwriting standards disclosed in the Offering Materials."  (Am. Compl. ¶¶ 300-07.)  Plaintiffs also extensively allege reliance on Defendants' "representations and assurances regarding the quality of the mortgage collateral underlying the Certificates" and subsequent damages.  (Am. Compl. ¶¶ 308-309, 422-24.)  Accordingly, the Court finds that Plaintiffs adequately pled a cause of action for fraud in its Amended Complaint.

### B.  Count Two: Aiding and Abetting Fraud Against All Defendants

Defendants do not raise any independent arguments relating to Plaintiffs' claim for aiding and abetting fraud.  Thus, Defendants' motion is denied as to Count Two.

### C.  Count Three: Equitable Fraud As To All Defendants

Plaintiffs set forth a cause of action for equitable fraud for the same reasons discussed with respect to common law fraud.  "To recover based on equitable fraud the plaintiff must prove his or her reasonable reliance on a material misrepresentation of fact."  Daibo v. Kirsch, 316 N.J. Super. 580, 588 (App. Div. 1998). "Equitable fraud is similar [to common law fraud], but does not require knowledge of the falsity and an intent to obtain an undue advantage."  Weil v. Express Container Corp., 360 N.J. Super. 599, 613 (App. Div. 2003).   In other words, "the key distinction between legal and equitable fraud is that legal fraud requires proof of intent while equitable fraud does not."  Dutton Rd. Associates LP v. Sunray Solar, Inc., No. 10-5478, 2011

WL 1375681, at *2 (D.N.J. Apr. 12, 2011). "Even an innocent misrepresentation can constitute equitable fraud justifying rescission." Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 635 (1995).

Defendants argue that Plaintiffs' equitable fraud claim fails because Plaintiffs did not rely on Defendants for investment purposes. (Defs. Br. 23.) As previously discussed, this Court finds that Plaintiffs have adequately pled reasonable reliance on Defendants' alleged misrepresentations. Defendants further argue that Plaintiffs equitable fraud claim seeks recession which is not available without an allegation that damages would be inadequate. (Defs. Br. 24.) See Walter v. Holiday Inns, Inc., 784 F. Supp. 1159, 1166 (D.N.J. 1992). Plaintiffs allege that they sustained damages proximately caused by the alleged misrepresentations. In the Amended Complaint, Plaintiffs request rescission or rescissory damages to the extent there is no adequate remedy at law. (Am. Compl. ¶¶ 444, 468-69, 486-87.) For the purpose of pleadings, this Court is satisfied that the equitable fraud claim contains sufficient factual allegations. Accordingly, Plaintiffs' equitable fraud claim survives this motion.

### D. Count Four: Negligent Misrepresentation Against All Defendants

To state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege that "1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." McCall v. Metro. Life Ins. Co., 956 F. Supp. 1172, 1186 (D.N.J. 1996). A negligent misrepresentation claim may be based on an affirmative misrepresentation or an omission. See e.g., Highlands Ins. Co. v. Hobbs Group, LLC., 373 F.3d 347, 355 (3d Cir. 2004).

Most of Defendants' arguments relating to Plaintiffs' negligent misrepresentation claim address the "special relationship" requirement that exists to state a claim under New York law. (Defs. Br. 23-24.)  For the purposes of this motion, because the Court is applying New Jersey law wherein the "special relationship" element does not exist, these arguments are moot.  See Highlands Ins. Co., 373 F.3d at 355 (noting that under New Jersey law, a negligent misrepresentation claim "is not limited to special relationship situations").

As with any negligence-based claim, the defendant must owe a duty of disclosure to the plaintiff.  Singer v. Beach Trading Co., Inc., 379 N.J. Super. 63, 74 (App. Div. 2005). The duty, however, need not be based on a special relationship; "the guiding principle for the imposition of liability is fairness to both the party making the representation and to the party aggrieved by its dissemination."  Id.  "The question of whether a duty exists is a matter of law properly decided by the court, not the jury."  Carter v. Lincoln–Mercury, Inc. v. EMAR Group, Inc., 135 N.J. 182, 194 (1994).  As the Third Circuit noted, the "required duty of disclosure may [ ] arise in any situation called for by good faith and common decency."  Highlands, 373 F.3d at 355.

In this case, Plaintiffs argue that Defendants owed them a duty based on their "exclusive control over the documentary evidence . . . and stood in a long-standing relationship of trust with Prudential."  (Pls. Br. 32-33.)  Plaintiffs allege that they were "heavily reliant on Defendants' unique, special, and superior knowledge regarding the Mortgage Loans" in light of the fact that Plaintiffs could not evaluate the loan files underlying the certificates.  (Am. Compl. ¶ 491.) Plaintiffs further allege that "Defendants were in the business of providing information for use by others, including Prudential."  (Am. Compl. ¶ 493.)

In response, Defendants state that Plaintiffs fail to cite to any case law supporting its proposition that the duty of disclosure exists between sophisticated commercial entities engaging

17

in arm's length transactions.  (Defs. Br. 15-16.)  Specifically, Defendants rely on <u>Commerce Bancorp, Inc. v. BK Int'l Ins. Brokers, Ltd.</u> to argue that "two parties to a contract, who negotiated at arms-length to achieve the acquisition of a business" does not constitute a negligent misrepresentation case.  490 F. Supp. 2d 556, 564 (D.N.J. 2007).  This Court finds that the facts of <u>Commerce Bancorp, Inc.</u> are distinguishable from the instant case.   In <u>Commerce Bancorp, Inc.</u>, "[plaintiff] d[id] not allege that [defendant] made the alleged assurances for [plaintiff's] 'benefit and guidance'" and instead defendant "made the assurances to further its own interests, to the detriment of [plaintiff]."  490 F. Supp. 2d at 564.  To the contrary, in this case, Plaintiffs specifically allege that Defendants made representations and assurances for Plaintiffs benefit and guidance knowing that Plaintiffs would rely on the information.  (<u>See</u> Am. Compl. ¶¶ 490-97.) Accordingly, this Court finds that Defendants owed a duty of care to Plaintiffs.

The remaining elements of a negligent misrepresentation claim are substantially similar to a common law fraud claim.  This Court's previous discussion of the relevant facts establishes that Plaintiffs have sufficiently pled Defendants' alleged misrepresentations, that Plaintiffs were reasonable recipients of the misrepresentations, that Plaintiffs reasonably relied on the information, and that Plaintiffs suffered damages as a result of the misrepresentations. Accordingly, this Court finds that Plaintiffs have sufficiently pled a claim for negligent misrepresentation.

### E.  Count Five: Violation of New Jersey RICO, N.J.S.A. 2C:41-1, <u>et. seq.</u>

Under New Jersey's RICO statute, it is "unlawful for any person [to] receive[] any income derived, directly or indirectly, from a pattern of racketeering activity . . . [and] to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the

activities of which affect trade or commerce." N.J. Stat. Ann. § 2C:41-2.  The statute defines a "person" as "any individual or entity or enterprise . . . holding or capable of holding a legal or beneficial interest in property."  Id.

Plaintiffs must establish "five elements in a substantive [New Jersey] RICO offense: (1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity."  State v. Ball, 141 N.J. 142, 181 (1995).

### 1.  Existence of An Enterprise

Defendants argue that the "enterprise" element is not satisfied because "corporate affiliates, such as a parent corporation and its subsidiaries, cannot associate with each other to form an 'enterprise' for purposes of federal RICO."  (Defs. Br. 27 (emphasis added).)

New Jersey broadly construes the "enterprise" element, unlike the federal statutory counterpart.  See e.g., Maxim Sewerage Corp. v. Monmouth Ridings, 273 N.J. Super. 84, 95 (Sup. Ct. 1993) ("New Jersey RICO [ ] defines "person" more broadly than the federal statute.") The New Jersey Supreme Court has held that the "'enterprise' element will be satisfied if there exists a group of people, no matter how loosely associated, whose existence or association provides or implements the common purpose of committing two or more predicate acts."  Ball, 141 N.J. at 160.  The element is also satisfied if the enterprise "is no more than the sum of the racketeering acts."  Id.  Therefore, the "'enterprise' does not have to be an organization whose purpose is greater than the predicate acts, nor does it have to evidence any definable structure." Id.

In light of New Jersey's broad and expansive construction of the "enterprise" element,

this Court finds that Plaintiffs have sufficiently pled the existence of an enterprise.   In the Amended Complaint, Plaintiffs provide allegations regarding the members of the "Goldman Enterprise," the purpose of the enterprise, the management of the enterprise, and structure of the enterprise.   (See Am. Compl. ¶¶ 502-04; see also Am. Compl. ¶¶ 20-26, 31-37, 42, 51-52, 57-60.)

### 2.   Enterprise Affected New Jersey Trade Or Commerce

The second element that Plaintiffs must establish for a New Jersey RICO claim is "that defendant was employed by or associated with a racketeering enterprise which engaged in trade or commerce in New Jersey or affected trade or commerce in New Jersey."   State v. Casilla, 362 N.J. Super. 554, 565 (App. Div. 2003).   Under New Jersey RICO, "trade or commerce" includes "all economic activity involving or relating to any commodity or service."   N.J. Stat. Ann. 2C:41-1(h).

Defendants argue that their activities did not affect trade or commerce in New Jersey because the conduct alleged "did not take place in New Jersey or have any effect in New Jersey." (Defs. Br. 28.)   Defendants also claim that "the alleged 'enterprise' consisted entirely of New York entities operating in New York" and that Plaintiffs failed to allege that securities were sold in New Jersey, that meetings were held in New Jersey, that misrepresentations were made in New Jersey, or that any underlying assets were located in New Jersey.   (Defs. Br. 28 (emphasis in original).)

This Court finds that the Amended Complaint contains sufficient allegations regarding Defendants' enterprise affecting trade or commerce in New Jersey.   Specifically, Plaintiffs allege that the RMBS purchases "were all made from New Jersey, and the decisions to purchase, including reliance on the Offering Materials, also took place in New Jersey."   (Am. Compl. ¶

19.)  Plaintiffs also allege that Defendants caused economic harm to New Jersey residents.  (Am. Compl. ¶¶ 13-16, 18.)  Thus, Plaintiffs satisfy the second element.

### 3.   Defendant Was Employed By, Or Associated With the Enterprise

"Under N.J.S.A. 2C:41-2c, a person is 'employed by or associated with an enterprise' if he or she has a position or a functional connection with the enterprise that enables him or her to engage or participate directly or indirectly in the affairs of the enterprise."  Ball, 141 N.J. at 175. "[T]he threshold showing of 'association' is not difficult to establish: it is satisfied by proof that the defendant was 'aware of at least the general existence of the enterprise.'"  United States v. Parise, 159 F.3d 790, 796 (3d Cir. 1998) (quoting United States v. Eufrasio, 935 F.2d 553, 577 n. 29 (3d Cir. 1991)).

The parties do not dispute this element.  This Court finds that the Amended Complaint sufficiently satisfies this element.

### 4.   Defendants Participated in the Conduct of the Affairs of the Enterprise

"Unlike the federal RICO statute, NJ RICO does not require 'operation or management,' and instead participation is defined as acting 'purposefully and knowingly in the affairs of the enterprise in the sense of engaging in activities that seek to further, assist or help effectuate the goals of the enterprise.'"  Szelc v. Stanger, No. 08-4782, 2011 U.S. Dist. LEXIS 41827, at *28-29 (D.N.J. Apr. 15, 2011) (internal citation omitted).  These "activities may include acts that are managerial or supervisory or exercise control and direction over the goals, or over the methods used to achieve the goals, of the enterprise."  Ball, 141 N.J. at 175.  However, this is not to say that participatory conduct or activities are only limited to those acts that are managerial or supervisory.  The activities also includes "acts that are below the managerial or supervisory level, and do not exert control or direction over the affairs of the enterprise, as long as the actor,

directly or indirectly, knowingly seeks to carry out, assist, or further the operations of the enterprise or otherwise seeks to implement or execute managerial or supervisory decisions." Id.

The parties do not dispute this element.  This Court finds that the Amended Complaint sufficiently satisfies this element.

### 5.  Defendants Engaged in a Pattern of Racketeering Activity

The final element requires Plaintiffs to also establish the existence of a pattern of racketeering activity.  New Jersey RICO defines "racketeering activity" as any of the listed "crimes under the laws of New Jersey or [] equivalent crimes under the laws of any other jurisdiction."  N.J. Stat. Ann. § 2C:41-1.  New Jersey RICO defines "a pattern of racketeering activity" as:

> (1) Engaging in at least two incidents of racketeering conduct one of which shall have occurred after the effective date of this act and the last of which shall have occurred within 10 years (excluding any period of imprisonment) after a prior incident of racketeering activity; and
> (2) A showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

Id.  The primary inquiry in determining whether a pattern of racketeering activity exists is "relatedness."  Ball, 141 N.J. at 169.  Relatedness "calls for the application of a broad standard involving the totality of all relevant circumstances, which may include 'continuity.'"  Id.

Here, Plaintiffs allege that Defendants violated the New Jersey Uniform Securities Act,[9] engaged in Deceptive Practices,[10] committed Theft by Deception,[11] and Falsified Records.[12]  As

---

[9] The New Jersey Uniform Securities Act provides civil liability against any person who, inter alia,
>    (2) offers, sells or purchases a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), or
>    (3) offers, sells or purchases a security by employing any device, scheme, or artifice to defraud, or
>    (4) offers, sells or purchases a security by engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, or

Defendants correctly point out, the alleged predicate acts stem from the same conduct underlying Plaintiffs' claims for common law fraud, equitable fraud, and negligent misrepresentation. Defendants do not provide any independent arguments as to why the predicate acts fail.  Instead, Defendants rely on their arguments relating to Plaintiffs' failure to sufficiently plead their common law claims.

This Court finds that Defendants' previous arguments are not persuasive in defeating the sufficiency of Plaintiffs' alleged predicate acts.  For the same reasons previously articulated with respect to Plaintiffs' common law claims, Defendants' arguments fail.  All of Plaintiffs' common law claims are sufficiently pled.  Additionally, the Court finds that Plaintiffs pled the predicate acts in their Amended Complaint sufficiently to survive Defendant's Motion.

---

(5) engages in the business of advising others, for compensation, either directly or through publications or writings, as to the value of securities, or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities.

N.J. Stat. Ann. § 49:3-71.

[10] Under the Deceptive Practices Act, "[a] person commits an offense if in the course of business he . . . [ m]akes a false or misleading written statement for the purpose of promoting the sale of securities, or omits information required by law to be disclosed in written documents relating to securities."  N.J.S.A. 2C:21-7i.

[11] Under the Theft by Deception statute:

[a]  person is guilty of theft if he purposely obtains property of another by deception. A person deceives if he purposely:

a. Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind, and including, but not limited to, a false impression that the person is soliciting or collecting funds for a charitable purpose; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

b. Prevents another from acquiring information which would affect his judgment of a transaction; or

c. Fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

N.J. Stat. Ann. § 2C:20-4.

[12] Under the Falsifying Record statute, "a person commits a crime of the fourth degree if he falsifies, destroys, removes, conceals any writing or record, or utters any writing or record knowing that it contains a false statement or information, with purpose to deceive or injure anyone or to conceal any wrongdoing."

N.J. Stat. Ann. § 2C:21-4 (a).

### 6.  Defendants Engaged in a New Jersey RICO Conspiracy

New Jersey's RICO statute makes it unlawful for any person to conspire to violate any of the statute's prohibited activities provision. See N.J. Stat. Ann. § 2C:41-2(d).  As the New Jersey Supreme Court has articulated, conspiracy under RICO requires two elements:

> [A]n agreement to violate RICO and the existence of an enterprise. The agreement to violate RICO itself has two aspects. One involves the agreement proper, that is, an agreement to conduct or participate in the conduct or the affairs of the enterprise. The other involves an agreement to the commission of at least two predicate acts. If either agreement is lacking, the defendant has not embraced the objective of the conspiracy-the substantive violation of the RICO Act-that is required for any conspiracy conviction under classic conspiracy law.

Ball, 141 N.J. at 176.  Claims for conspiracy are held to the pleadings standard under Rule 8 rather than the stringent pleading standard under Rule 9(b).  See e.g., Miller v. P.G. Lewis & Assoc., No. 05-5641, 2007 WL 316446 (D.N.J. Jan. 30, 2007) ("Claims of conspiracy and aiding and abetting in relation to a RICO violation are not subject to the more stringent Rule 9(b) requirements regarding pleadings, but rather, the general notice-pleading standard of Rule 8.")

Plaintiffs allege in their Amended Complaint that "Defendants also violated N.J.S.A. 2C:41-2(d) by conspiring with others, including but not limited to the other members of the Goldman Enterprises, to violate N.J.S.A. 2C:41-2(c).   In furtherance of that conspiracy, Defendants committed overt acts that include but are not limited to the racketeering activity alleged above."  (Am. Compl. ¶ 547.)  Having concluded that Plaintiffs have sufficiently pled the existence of an enterprise and a viable RICO claim, the only element Plaintiffs must establish is an agreement to violate RICO.

Defendants primarily contend that Plaintiffs' New Jersey RICO conspiracy claim fails because corporate affiliates cannot engage in an intra-corporate conspiracy as a matter of law. (Defs. Br. 30.)   However, in support of this contention, Defendants rely only on case law

interpreting the federal RICO statute and not New Jersey's RICO statute.  See e.g., Dist. 1199P Health & Welfare Plan v. Janssen, L.P., No. 06-3044, 2008 WL 5413105, at *14 (D.N.J. Dec. 23, 2008) ("The majority of courts within this Circuit agree that a corporation cannot conspire with its agents and/or employees under § 1962(d) of RICO.")  The Court notes that Plaintiffs allege that Defendants conspired with "others, including, but not limited to the other members of the Goldman Enterprises."  (Am. Compl. ¶ 547.)  Because Plaintiffs have pled their RICO allegation to include "others" who are not limited to the Goldman Enterprise members, Plaintiffs do not allege merely an intra-corporate conspiracy.  (See Am. Compl. ¶ 547.)  At this stage, the Complaint, viewed in its entirety, contains enough allegations to satisfy this element. Accordingly, this Court finds that Plaintiffs have sufficiently pled a New Jersey RICO conspiracy claim.

**CONCLUSION**

   For the reasons set forth above, Defendants' Motion to Dismiss is DENIED.


                                                    s/Susan D. Wigenton, U.S.D.J.

Cc:    Madeline Cox Arleo, U.S.M.J.